IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOBILE CONVERSIONS, INC., <br>     Plaintiff, <br><br> v. <br><br> ALLEGHENY FORD TRUCK SALES, <br>     Defendant/Third-Party Plaintiff, <br><br> v. <br><br> HENDRICKSON USA, LLC, <br>     Third-Party Defendant. | 2:12-cv-1485 |

**MEMORANDUM OPINION**

Pending before the Court is the MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 90) filed by Third-Party Defendant, Hendrickson USA, LLC ("Hendrickson"), along with a brief in support (ECF No. 91). Defendant/Third-Party Plaintiff Allegheny Ford Truck Sales ("Allegheny Ford") has joined in Hendrickson's motion (ECF No. 93).[1] Plaintiff, Mobile Conversions, Inc. ("Mobile Conversions"), has filed a response in opposition to the motion (ECF No. 95). Hendrickson and Allegheny Ford have filed reply briefs (ECF Nos. 97, 99). Accordingly, the motion is ripe for disposition.

**I.    Background**

Mobile Conversions builds custom mobile facilities for mobile health screening and imaging. Sometime in 2010, Geisinger Medical Center ("Geisinger") ordered a custom coach from Mobile Conversions. In addition to other specifications, Geisinger required that the coach be equipped with an air-ride suspension system. Mobile Conversions found a cab and chassis at

---

1.    The Court notes that Allegheny Ford has reserved its right to file a motion for summary judgment on other grounds on or before January 22, 2015, the date by which all dispositive motions must be filed, according to the Second Amended Case Management Order (ECF No. 89) issued on August 8, 2014.

1

Allegheny Ford that fit most of the required specifications, but the truck did not conform to the desired cab-to-axle dimension and had a spring suspension system instead of an air-ride suspension system. Before purchasing the truck, Michael G. Dobbins ("Dobbins"), president of Mobile Conversions, specifically asked Allegheny Ford to equip the cab and chassis with the air-ride suspension system recommended by the manufacturer and to install it pursuant to factory specifications. Allegheny Ford, in turn, contacted Hendrickson through a Rear Suspension Application Request form and other communications, to determine which system was needed. Hendrickson responded that the PRIMAXX suspension system was appropriate for this particular truck. Based on this representation, Allegheny Ford purchased the PRIMAXX suspension system, manufactured by Hendrickson, from Daimler Trucks North America, LLC ("Daimler"), and installed the system in late August/early September 2010. After the system was installed, the truck was delivered to Mobile Conversions.

Mobile Conversions completed the body work on the truck and delivered the finished product to Geisinger in October 2010. Geisinger was only able to use the coach for about six weeks before the transmission failed. Mobile Conversions alleges that the PRIMAXX suspension system installed by Allegheny Ford was not suitable for the cab and chassis and the transmission failed as a result of unusual loading caused by the wrong air-ride system having been installed.

Mobile Conversions filed suit against Allegheny Ford in the United States District Court for the Southern District of Ohio in May 2012. On October 15, 2012, the case was transferred to this Court. In February 2013, Mobile Conversions filed a seven-count Amended Complaint. The Amended Complaint seeks the following in the way of damages: "recovery of the losses, costs and expenses incurred by Mobile Conversions, Inc.;" "[t]he value of the loss of good will, reputation and future business from a valued customer who had purchased multiple custom

units;" "[r]ecovery of the losses incurred by the Plaintiff's customer which have been billed to Plaintiff as a result of the actions of the Defendant as recounted in this Complaint;" and "costs, expenses and attorneys [sic] fees."[2] In response, Allegheny Ford filed a motion to dismiss/motion to strike (ECF No. 30), which the Court granted in part and denied in part on May 9, 2013, leaving only the claims for breach of contract and breach of warranty (ECF No. 37). On December 17, 2013, Allegheny Ford filed a Third-Party Complaint against Hendrickson and Daimler (ECF No. 48) and, following the filing of a motion to dismiss by Hendrickson, an Amended Third-Party Complaint (ECF No. 69). Daimler has since been voluntarily dismissed from the case under Fed. R. Civ. P. 41(a)(1)(A)(ii) (ECF No. 87).

**II.     Standard of Review**

Fed. R. Civ. P. 56(a) provides:

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Summary judgment, or partial summary judgment, must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must identify those portions of the record demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

---

2.    Plaintiff also sought triple damages under Ohio's Consumer Fraud Statute and punitive damages. However, the Court dismissed Mobile Conversions' statutory fraud claim, as well as its claim of punitive damages, so these issues are now moot.

To withstand a motion for summary judgment, the nonmoving party must show a genuine dispute of material fact for trial by citing to particular parts of material in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–248. The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c) (1)(A), or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B). In reviewing all of the record evidence submitted, the court must draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

**III.  Discussion**

In Hendrickson's motion for partial summary judgment, which has been joined by Allegheny Ford, Hendrickson seeks a judicial determination as to the recoverability of certain categories of damages claimed by Mobile Conversions in its Amended Complaint, as well as in an itemized list of damages prepared in September 2014. The categories of damages are as follows: (1) losses claimed by Geisinger and which Geisinger has apparently billed to Mobile Conversions; (2) attorney's fees, projected attorney's fees, and litigation costs; (3) damages for

lost managerial time;[3] (4) damages for loss of reputation; (5) hedonic and annoyance damages; (6) damages for the loss of use of the replacement truck provided to Geisinger while the new truck was being repaired; and (7) damages related to a 35% profit margin. The Court will address each of these categories *seriatim*.

      1.    **Damages for Losses Claimed by Geisinger**

Hendrickson argues that Mobile Conversions should be precluded from recovering damages in the amount of $185,375.70, which represents the amount that Geisinger has apparently billed Mobile Conversions for the losses it sustained as a result of the allegedly defective transmission. In response, Mobile Conversions argues that it is entitled to recover the full amount that it is required to pay to Geisinger, as such losses are consequential damages that flowed directly from the failure of the transmission.

Under Pennsylvania law, "consequential damages may be recovered in an action for breach of contract or breach of warranty." *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1190, 1195 (Pa. Super. Ct. 1991) (citing 13 Pa. Con. Stat. § 2714(c)). Pennsylvania's version of the Uniform Commercial Code ("U.C.C.") provides that "[c]onsequential damages . . . include: any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know . . . ." 13 Pa. Cons. Stat. § 2715. This U.C.C. section is merely a restatement of the common law rule for consequential damages initially set forth in the landmark case *Hadley v. Baxendale*, pursuant to which the touchstone is foreseeability. *See Kelly v. Hanscom Bros., Inc.*, 331 A.2d 737, 739-40 (Pa. Super. Ct. 1974).

It is well established that a buyer may recover damages from a seller for costs triggered by the buyer's resale of the defective goods to a third party. *See Kelly*, 331 A.2d at 740 (citation

---

3.    Hendrickson has treated the claim for lost managerial time as a subset of the attorney's fees issue, but the Court finds it more appropriate to address these matters separately.

5

omitted); *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1222-23 (3d Cir. 1970); *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 653 (3d Cir. 1990); *Birchwood of Los Angeles, Inc. v. Indopco, Inc.*, 67 F.3d 305 (9th Cir. 1995) (citations omitted); *Robert A. Reichard, Inc. v. Ezl. Dunwoody Co.*, 45 F. Supp. 153, 156-67 (E.D. Pa. 1942); *Fred Wolstenholme, Inc., v. Jos. Randall & Bro.*, 144 A. 909, 911 (Pa. 1929) (citation omitted). As Professor Williston has explained:

> [w]here goods are sold with a warranty to a dealer, the dealer may resell them with a similar warranty to a subpurchaser. Accordingly, if this is done and the subpurchaser recovers damages from the original buyer, the original buyer has a prima facie right to recover these damages against the seller who originally sold the original buyer the goods.

24 *Williston on Contracts* § 64:20 (4th ed.). These damages are considered a type of consequential damages. *See* 2 *Damages under the Uniform Commercial Code* § 11:32.

Hendrickson does not directly take issue with this general proposition. According to Hendrickson, however, since Mobile Conversions has not actually paid Geisinger's claim, its right to "indemnification" from Allegheny Ford has yet to arise (and, in fact, may never arise because it appears that the statute of limitations may have run on any breach of contract claim Geisinger might have against Mobile Conversions). As a result, Hendrickson argues, Mobile Conversions should be prevented from attempting to recover such damages in this case, lest it obtain a windfall.

Hendrickson's argument has a certain allure to it, as it is impossible to tell at this point whether Mobile Conversions will ever pay Geisinger for its claimed losses. *See Somerville Container Sales v. Gen. Metal Corp.,* 120 A.2d 866, 872 (N.J. Super. App. Div. 1956) ("Since many contingencies may in fact avert or reduce the ultimate satisfaction of the subvendee's claim by the plaintiff, notwithstanding a current recovery inclusive thereof, the rule has been viewed

with some concern."). Nevertheless, the Court is ultimately unconvinced by Hendrickson's reasoning, as it misapprehends the nature of Mobile Conversions' claim. Although Hendrickson is correct that a right to indemnity does not arise until judgment is entered or a claim is settled, that is of no moment here because Mobile Conversions' claim is not one for indemnity. As one leading commentator has observed, "a breach of warranty action against a seller for consequential loss arising from a third-party claim is quite similar to a claim for indemnification," but "to the extent that it makes a difference under local rules, it should be treated as a simple claim for consequential loss and should not be subjected to special rules for indemnification claims." 2 *Damages under the Uniform Commercial Code* § 11:32.

This is important because, whereas a right to indemnity may not arise until a claim is paid, "[u]nder a breach of warranty theory, [the plaintiff] can sue whether or not it has already paid on a claim against it." *S.G. Supply Co. v. Greenwood Int'l, Inc.*, 769 F. Supp. 1430, 1439 (N.D. Ill. 1991); *see Step-Saver*, 912 F.2d at 653 (citations omitted) (explaining that "consequential damages may be recovered [in a breach of warranty action], even though [the plaintiff-buyer] is not (at this point) legally responsible for the underlying obligation"). All that a plaintiff must establish is its *probable* liability to the third party. *See* 4A *Anderson U.C.C.* § 2-715:309 (3d. ed.) ("[S]o long as the buyer proves the probability of being sued, it does not matter that no suit has yet brought."); 24 *Williston on Contracts* § 64:20 ("[E]ven though the original buyer has not yet been held liable to the buyer's subvendee, the amount of the buyer's probable liability may be recovered from the original seller."). "Commentators have endorsed this approach because 'it recognizes practical obligations that require a businessman to conform to custom and usage in his trade in order to stay in business.'" *Step-Saver*, 912 F.2d at 653 (quoting J. White & R. Summers, 1 *Uniform Commercial Code* 520 (3d ed. 1988)).

7

The Court, therefore, finds that Mobile Conversions' claim for losses sustained by Geisinger has not been placed "beyond the pale of [Mobile Conversions'] recovery by reason merely of its not having been paid or established." *Somerville Container Sales*, 120 A.2d at 873. The Court must emphasize, though, that Mobile Conversions' recovery of these damages is dependent upon its ability to "show at least that liability to or settlement with [Geisinger] was foreseeable, reasonable, and subject to calculation." *Superwood Corp. v. Larson-Stang, Inc.*, 311 F.2d 735, 740 (8th Cir. 1963) (citations omitted); *see also Mattingly, Inc. v. Beatrice Foods Co.*, No. 78-1094, 1983 WL 2184, at *27 (D. Kan. Aug. 10, 1983), *vacated on other grounds*, 835 F.2d 1547 (10th Cir. 1987) (quoting *Boyce v. Fowler*, 87 F. Supp. 796, 799 (D. Mass. 1949)) (explaining that this type of recovery has is "generally recognized as proper in a breach of warranty case when goods are purchased for resale, so long as the amounts the buyer says it owes are 'foreseeable, reasonable and subject to calculation.'").

For example, in *Superwood*, the plaintiff was a contractor who used defective siding manufactured by the defendant in the construction of 60 new homes. *Superwood*, 311 F.2d at 736. As part of its damages, the plaintiff attempted to recover the cost of future repairs it was purportedly obligated to make to the homes, and following a trial, a jury awarded at least some of those anticipated costs. *Id.* The Eighth Circuit, however, found a lack of proof that the plaintiff had a "legal obligation to the home-owners and as to whether, even if such legal obligation exists, the liability is certain or fixed." *Id.* at 740. While there was evidence that the plaintiff had spent some money making repairs to the houses, there was no evidence that the "home-owners could or would bring action against plaintiff, that all of the siding on all of the houses would be subject to such claims if made, or that plaintiff would be required to make such repairs before any applicable statute of limitations might bar the homeowners' alleged claims." *Id.* at 741.

Thus, the court of appeals held that the jury's verdict was unfounded insofar as it awarded the plaintiff damages for losses attendant to future home repairs, and remanded the case for further evidentiary development by the plaintiff.

At this point, the record in this case is not sufficient to allow the Court to decide that Mobile Conversions cannot, as a matter of law, establish its probable liability to Geisinger and, in turn, that Allegheny Ford should be liable for that amount. On the one hand, unlike in the *Superwood* case, Mobile Conversions has apparently received a bill from Geisinger setting forth its losses, so the damages are reasonably calculable. Moreover, Dobbins has testified that he "feel[s] obligated . . . to minimize whatever losses [Geisinger] may have incurred as a result of [Mobile Conversions] selling them a defective unit." Dobbins Dep. at 134:5-8, ECF No. 90-4. That testimony undermines Hendrickson's contention that Mobile Conversions will walk away with a windfall by never paying Geisinger (and one can imagine that just ignoring this bill would not be good for Mobile Conversions' business). On the other hand, there is only limited information in the documentary evidence submitted to the Court about whether Geisinger actually intends to pursue recovery from Mobile Conversions, the nature of the claim(s) (e.g., breach of contract, breach of warranty, etc.) and the types of damages that might be raised by Geisinger against Mobile Conversions, whether Mobile Conversions has actually agreed to pay Geisinger's claims, and whether Mobile Conversions might have a valid statute-of-limitations defense to the claims by Geisinger. A jury, aided by a full evidentiary record, will be better able to weigh all of these considerations and resolve this question. "It goes without saying that the court [will] also instruct the jury with respect to the law applicable to the subclaim and require it to determine, on the facts adduced, and after consideration of the factors aforesaid, what the reasonably probable accountability of the plaintiff to [Geisinger] will be, and to allow that

9

amount and no more in its assessment of [Mobile Conversions'] damages." *Somerville Container Sales*, 120 A.2d at 873. This aspect of Hendrickson's motion for summary judgment must, therefore, be denied.

### 2. Attorney's Fees, Projected Attorney's Fees, and Litigation Costs

Hendrickson argues that Mobile Conversions' claims for attorney's fees, projected attorney's fees, travel and lodging expenses, and other litigation costs and expenses are barred by the American Rule. In general, under the American Rule, "'each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct.'" *McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009) (quoting *Lucchino v. Commonwealth*, 809 A.2d 264, 267 (Pa. 2002)). Seeking to come within one of the recognized exceptions to this rule, Mobile Conversions argues that Allegheny Ford displayed bad faith by requiring Mobile Conversions "to utilize the courts in order to enforce a right which clearly belongs to [it]." Mobile Conversions' Resp. at 14, ECF No. 95. More specifically, Mobile Conversions argues that it immediately informed Allegheny Ford of the transmissions' failure and provided an expert report to Allegheny Ford detailing what went wrong, yet neither Allegheny Ford nor its insurance company did anything in response. In Mobile Conversions' view, this conduct justifies fee-shifting.

The Court disagrees. While the Court recognizes that some courts have held that bad faith may be shown "where recalcitrance forces a claimant to hire a lawyer and go to court to get what is plainly owed," *In re Orion Ref. Corp.*, 372 B.R. 688, 704 (Bankr. D. Del. 2007), it cannot be said that Allegheny Ford's liability to Mobile Conversions was plainly established solely on the basis of an expert report prepared by Mobile Conversions' insurance company. To the contrary, Allegheny Ford has raised colorable defenses to its liability throughout this litigation, and

continues to maintain that it is not liable and, alternatively, that if it is liable, then its liability should be passed through to Hendrickson. Cases in which fee-shifting has been found to be warranted under the theory pursued by Mobile Conversions have involved far more egregious circumstances. *Cf. Republic of Cape Verde v. A & A Partners*, 89 F.R.D. 14, 21 (S.D. N.Y. 1980) ("Most significant to the 'bad faith' analysis is that the plaintiff was compelled to sue to recover a deposit clearly due and owing to it, a matter which was never seriously disputed by defendant prior to or during the litigation."). Accordingly, Hendrickson's motion is granted with respect to Mobile Conversions' claim for attorney's fees, projected attorney's fees, and litigation costs and expenses.

### 3. Lost Management Time

Mobile Conversions seeks $15,300.00 for the cost of the time Dobbins spent "clean[ing] up the mess and taking time from running the business to deal with the litigation." Mobile Conversions' Resp. at 5, ECF No. 95. Hendrickson argues that these damages are not recoverable because Mobile Conversions cannot show that "the business somehow lost money because of the alleged incident." Hendrickson's Br. in Supp. at 10, ECF No. 91. Research has not revealed any Pennsylvania or Third Circuit case law directly on point. However, "[m]ost courts that have considered the issue have concluded that a plaintiff can recover the value of employees' lost services as damages in a contract or tort action, even when it had not shown that it incurred additional expenses or lost profits." *State v. Rouse*, 647 N.W.2d 286, 289 (Wis. App. 2002) (collecting cases). As the Ninth Circuit Court of Appeals has explained, "[t]he issue is not whether [the plaintiff-company] would have paid the supervisors' salaries if the defendant had not breached the contract, but whether the breach deprived [the plaintiff-company] of the services it paid for." *Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781, 785 (9th Cir. 1982). The

Sixth Circuit Court of Appeals adopted the approach in *Convoy* in *Dunn Appraisal Co. v. Honeywell Information Systems, Inc.*, 687 F.2d 877, 884 (6th Cir.1982) and held that a chief executive officer's salary could be recovered by his employer to the extent he spent time dealing with a problem caused by the defendant's defective equipment. In the absence of any Pennsylvania authority on point, the Court will defer to the reasoned judgments of these courts. Accordingly, Mobile Conversions may recover damages for time spent by Dobbins in dealing with the alleged breach.

4. **Loss of Reputation Damages**

Mobile Conversions next claims $75,000.00 for damage allegedly done to its reputation. The terms "reputation" damages and "good will" damages are coextensive with the term "prospective lost profits." *See AM/PM Franchise Ass'n v. Atl. Richfield Co.*, 584 A.2d 915, 924 (Pa. 1990). "Good will refers to the reputation that businesses have built over the course of time that is reflected by the return of customers to purchase goods and the attendant profits that accompanies such sales." *Id.* If a buyer's customers become "so disgruntled" about a defective product that they start "to patronize a competitor's business," the buyer is said to have suffered "a 'loss of good will' beyond the direct loss of profits from the nonconforming goods; his future business would be adversely affected . . . . Thus, good will damages refer to profits lost on future sales rather than on sales of the defective goods themselves." *Id.* Although good will damages were historically unavailable under Pennsylvania law, the Pennsylvania Supreme Court now appears to permit recovery their recovery in both breach of contract and breach of warranty cases. *See id.* at 925 n.19 (noting that there is an "extensive history of allowing claims for loss of prospective profits in breach of contract case[s]" under Pennsylvania law); *id.* at 926 (overruling earlier cases that categorically prohibited plaintiffs from seeking good will damages for breach

of warranty).

Nevertheless, while these damages are at least theoretically recoverable, "[t]he Pennsylvania Supreme Court has long recognized the difficulty in proving [them]." *Miller v. Cont'l Cas. Co.*, No. 2542 EDA 2005, 2007 WL 2938189, at *9 (Pa. Super. Ct. Oct. 5, 2007). To get a claim for good will damages to a jury, a plaintiff must be "able to introduce sufficient evidence" to show that the claimed losses were "causally related to the breach" and "to provide the trier of fact with a reasonable basis from which to calculate damages." *Id.* There is no hard-and-fast way of "remov[ing] [these damages] from the realm of speculation." *Id.* at 926 n.20. The Pennsylvania Supreme Court has, however, endorsed "several methods of proof to establish prospective loss profits: (1) evidence of past profits; (2) profits made by others or by similar contract where the facts were not greatly different; (3) testimony of experts if based on anything more than individual opinions or conjecture." *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 681 (3d Cir. 1991) (citing *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 22 A.2d 709, 714 (Pa. 1941)).

In the case at hand, Mobile Conversions has not even attempted to substantiate its claim for $75,000.00 in good will damages through any of these methods of proof. There is no evidence of past profits, no evidence of profits made on similar contracts, and no expert testimony in the record upon which a jury could award Mobile Conversions damages for prospective lost profits. Even more important, there is also no evidence that Mobile Conversions' reputation has been damaged by this incident. In fact, as Hendrickson points out, Mobile Conversions' sales appeared to have remained steady and possibly slightly increased even after the transmission issue came to light. Because there is nothing in the record that would allow a jury to award damages for loss of reputation, Hendrickson's motion must be granted with respect

to this claim.

5.  **Hedonic/Annoyance Damages**

Plaintiff seeks $50,000.00 in "hedonic/annoyance" damages. "Hedonic damages" award a plaintiff "for the loss of life's enjoyment and pleasures[.]" *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 588-89 (W.D. Pa. 2004). While these types of damages are available in personal injury actions, *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 627 (Pa. Super. Ct. 1999), they are not recoverable under contract law, *Warrick v. Pro Cor Ambulance, Inc.*, 709 A.2d 422, 426 n.8 (Pa. Commw. Ct. 1997), *aff'd*, 739 A.2d 127 (Pa. 1999) ("[T]he damages sought included physical pain, mental anguish, disability, disfigurement, loss of life's pleasures and emotional distress, for which there is no recovery under contract law."). Nor is there any authority for awarding "annoyance" damages in contract cases. *See generally Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 522 (W.D. Pa. 2012) (citations omitted) (explaining that emotional distress damages are typically not recoverable in contract actions). Thus, this aspect of Hendrickson's motion will be granted.

6.  **Loss of Use Damages**

Mobile Conversions seeks damages for the loss of the use of the replacement coach provided to Geisinger while its new coach was being repaired, equal to the purported rental value of the truck. Hendrickson argues that these damages are not recoverable because Mobile Conversions did not suffer any losses by allowing Geisinger to use the replacement. As Hendrickson puts it, "Dobbins's unequivocal testimony is that the Chevrolet would have sat on his lot unused had it not been temporarily used as a replacement vehicle by Geisinger." Hendrickson's Br. in Supp. at 17, ECF No. 91. Although there is authority allowing damages for loss of use of property in a variety of contexts, Plaintiff has not cited any cases in which recovery

14

of loss of use damages has been allowed in circumstances similar to those in this case. Nor has the Court's independent research revealed any such authority. Thus, Hendrickson's motion will be granted as to this item of damages.

### 7. Profit Margin Damages

Hendrickson and Allegheny Ford appear to concede that Mobile Conversions can recover its actual costs associated with making the replacement truck serviceable enough for Geisinger's use. But the parties disagree about whether Mobile Conversions can tack on a 35 percent profit margin on top of its actual costs. Hendrickson argues that Mobile Conversions would be receiving a windfall if it is allowed to do so. Mobile Conversions argues otherwise. As it contends:

> [it] was forced at its own cost to use its own resources and employees to clean up the mess created by these two Defendants . . . While that was being done, neither Michael Dobbins or his employees were able to work on projects that would benefit the corporation or provide income. Mobile Conversions was forced to absorb that time and employee wages and should be reimbursed for it.

Mobile Conversions' Resp. at 20, ECF No. 91.

Neither party has directed the Court's attention to any authority directly on point. In other settings, however, "when the party seeking recovery made the repairs, courts have expressed conflicting views on the question whether profits should be awarded as an element of damages." *Dillingham Shipyard v. Associated Insulation Co.*, 649 F.2d 1322, 1327 (9th Cir. 1981) (citing *Crain Brothers, Inc. v. Duquesne Slag Products Co.*, 273 F.2d 948, 952-53 (3rd Cir. 1959); *Bultema Dock & Dredge Co. v. Steamship David P. Thompson*, 252 F. Supp. 881 (W.D. Mich. 1966)). The Third Circuit Court of Appeals has already come down on one side of this divide. *See Crain Brothers*, 649 F.2d at 953. In *Crain Brothers*, the plaintiff suffered damage to its barges as a result of the defendant's negligence. *Id.* The plaintiff did the salvage and repair work

15

on its own and then, as part of its damages, claimed the itemized cost and an additional percentage for profit. *Id.* In disallowing the claim for profit, our Court of appeals explained:

> In support of the claim for the allowance of a profit on this operation it is argued that if an independent contractor had performed this work for Crain, an item of profit would properly have been included in the charge and would have constituted an element of damages recoverable by Crain from defendant. But the reason that Crain could have recovered this item is that its actual loss would have been the full amount charged by the independent contractor, including the contractor's profit. On the other hand, performing the work itself, Crain was out-of-pocket only the cost of the operation. Crain is entitled to be compensated fully for its losses and expenses as a result of the accident in suit, not to make a profit on the mishap. Crain's recovery for its own salvage work must be reduced accordingly.

*Id.* This reasoning is equally applicable in the context of a breach of contract claim. The purpose of contract damages is to put the non-breaching party in the same place it would have been in the absence of the breach. Awarding a percentage for profit would do that – and then some. Thus, the Court will not allow Plaintiff to pursue such damages.

## IV. Conclusion

For the foregoing reasons, Hendrickson's motion for partial summary judgment motion will be **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

                                                                                             McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOBILE CONVERSIONS, INC., <br>     Plaintiff, <br><br> v. <br><br> ALLEGHENY FORD TRUCK SALES, <br>     Defendant/Third-Party Plaintiff, <br><br> v. <br><br> HENDRICKSON USA, LLC, <br>     Third-Party Defendant. | 2:12-cv-1485 |

## ORDER OF COURT

**AND NOW**, this 29th day of December, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 90) filed by Third-Party Defendant, Hendrickson USA, LLC and joined by Defendant Allegheny Ford Truck Sales, is **GRANTED IN PART** and **DENIED IN PART** as set forth more fully in the foregoing Memorandum Opinion.

                                                  BY THE COURT:

                                                  s/Terrence F. McVerry
                                                  Senior United States District Judge

cc:     **Sherrill Patricia Hondorf, Esquire**
           Email: shondorf@gmail.com

           **John J Garvey , III, Esquire**
           Email: jgarvey@garveyshearer.com
           **Jason Edward Abeln, Esquire**
           Email: jabeln@garveyshearer.com
           **Joseph W. Selep, Esquire**
           Email: selep@zklaw.com

**Joseph F. Butcher, Esquire**
Email: butcher@zklaw.com
**Samantha Quinn, Esquire**
Email: squinn@zklaw.com

**Michael F. Nerone, Esquire**
Email: mnerone@pionlaw.com
**John T. Pion, Esquire**
Email: jpion@pionlaw.com